# FREDERICK A. HEMMER, RESPONDENT, *v.* WILLIAM A. HUSTACE, APPELLANT.

*Foreclosure by advertisement — the prohibition contained in section 2393 of the Code of Civil Procedure, against selling more lots than are necessary, is absolute — when a title is unmarketable.*

In an action brought by the plaintiff to recover damages arising out of the failure of the defendant to perform a contract for the conveyance of certain real property in the State of New York, it appeared that the defendant had purchased the property at a sale in proceedings for the foreclosure of a mortgage by advertisement. The premises were described in three several mortgages given by one Sichling to the defendant as "all those three certain lots known and distinguished by the Nos. 212, 213 and 214 on a map entitled 'map of the village of Melrose, South,' etc., and which said lots, when taken together, are bounded and described as follows: "

In the map of Melrose referred to, the three lots were distinctly parceled out, and at the time of the making of the mortgage there were upon lot No. 213 a four-story brick store and a two-story frame house, having no connection with each other, and each occupied by different parties.

*Held,* that the premises were separate and distinct parcels and came within the prohibition contained in section 2393 of the Code of Civil Procedure, declaring that when the property consists of two or more lots they must be sold separately, and that as many only of the distinct lots shall be sold as it is necessary to sell, in order to satisfy the amount due at the time of the sale and the costs and expenses allowed by law.

That, taking the whole context of the section into consideration, it was manifest that it was intended to be absolute and mandatory.

*Wallace* v. *Feely* (61 How., 225; affirmed 88 N. Y., 646) distinguished.

That as the record did not show that the sale of the entire property was necessary to realize and discharge the amounts due at the time of the sale, it became necessary for the defendant to establish the fact that the prohibition of a redundant sale did not apply to the proceedings under which he acquired his title; and that the purchaser was not required to accept a doubtful title.

It appeared that Sichling died on August 16, 1875, leaving a will, by which he devised an interest in the lot to his son, who was then about five years old, and who was an infant, in 1881, when the defendant acquired his title.

*Held*, that as there was nothing to show that the infant heir of the mortgagor, who had not yet arrived of age, was cut off by any proceeding from his right to assai the defendant's title, and as the title was open to a reasonable doubt, it was not a marketable title.

That the court could not make it such by passing upon an objection depending upon a disputed question of fact, or a doubtful question of law, in the absence of the party in whom the outstanding right was vested.

That the plaintiff was entitled to recover.

*Fleming* v. *Burnham* (100 N. Y., 9) followed; *The Mutual Life Insurance Company* v. *Bronson* (22 N. Y. Weekly Dig., 452) distinguished.

APPEAL from a judgment of the New York Special Term, entered in the office of the clerk of the city and county of New York on July 16, 1888, the action having been submitted upon a statement of facts agreed upon by the respective parties.

   *Walter S. Allerton*, for the appellant.

   *J. C. De la Mare*, for the respondent.

BRADY, J.:

This action was brought by the plaintiff to recover damages for the failure of the defendant to perform a contract of conveyance to the plaintiff, of certain real property in the twenty-third ward of this city. The plaintiff insists that the defendant cannot give a good title, for the reason that he derives his from a purchase under foreclosure proceedings by advertisement and the sale of the premises covered by the mortgage in one parcel, when they were, in fact, distinct parcels, and should, under the provisions of the law, have been sold separately. The premises in question were part of lot No. 213, as indicated upon a map of the village of Melrose South. One Sichling, the then owner, made three several mortgages to the defendant, covering the premises and other property, describing them as " all those three certain lots known and distinguished by the numbers 212, 213 and 214," on a map entitled, " Map of the village of Melrose South," etc., and which said lots, *when taken together*, are bounded and described as follows, etc. It appears that at the time of making the mortgages there were on the premises described in the complaint two buildings, one a four-story

brick store and a two-story frame house, both buildings being on lot 213 already mentioned, but having no connection with each other and occupied by different parties. It also appears that Sichling died seized of the premises, but subject to the mortgages mentioned, on the 16th day of August, 1875, leaving a will, the provisions of which it is not necessary to state, but from which it appeared that in disposing of his estate he included in the objects of his bounty his son Herman Sichling, who, from the record, appears then to have been about five years and five months of age, and who was, consequently, an infant at the time the defendant acquired title, namely, in 1881. In the map of Melrose South, to which reference has been made, the three lots are distinctly parceled out which were covered by the mortgages to which reference has also been made, lots 213 and 214 being fifty-nine feet two and one-half inches front each on Cortlandt avenue, and lot 212 being fifty feet front on Denman street, now One Hundred and Fiftieth street. And the mortgage, upon the foreclosure of which the defendant acquired title, describes the premises as "all those three certain lots, pieces or parcels of land known and distinguished by the Nos. 212, 213 and 214 on the map of the village of Melrose South," and which lots, *when taken together*, were bounded and described as follows, etc. On these facts the question presented *in limine*, as suggested by Ingraham, J., in his opinion, was: Is there a reasonable doubt as to the vendor's title such as to affect the value of the property or interfere with its sale to a reasonable purchaser? And this inquiry springs from the well-established rule that the purchaser of real estate is entitled to a good marketable title, free from all reasonable doubt. (*Methodist Church Home* v. *Thompson*, 10 Cent. Rep., 506; *Hellreigel* v. *Manning*, 97 N. Y., 56; *Jordan* v. *Poillon*, 77 id., 518; *Brooklyn Park Comrs.* v. *Armstrong*, 45 id., 234; *Fleming* v. *Burnham*, 100 id., 9.) The premises, as we have seen from the map of Melrose South, and in the description in the mortgages, especially when considered with reference to the distinct tenements and their occupation by different persons, appeared, beyond doubt, to be separate and distinct parcels, and thus to have been within the prohibition contained in the provisions of the Code (§§ 1678, 2393). These sections were designed to prevent the unnecessary sale or

sacrifice, or both, of property mortgaged, a circumstance which would doubtless occur were it not for these beneficient provisions of law still continued, by which apparently well-laid schemes are frustrated. Section 1678, which is designed to provide for judicial sales, declares that if the property consists of two or more distinct buildings, farms or lots, they shall be sold separately unless otherwise ordered by the court. (*Wallace* v. *Feely*, 61 How., 225; affirmed 88 N. Y., 646.) It has been held that this section was directory, but subsequently and by chapter 682 of the Laws of 1881, that section was amended by substituting the word "shall" for "must," and this would seem to be an indication, on the part of the legislature, to obviate the construction which has been placed on the word "must," by pronouncing it to be directory merely in its effect. Section 2393, and which is one of the sections relating to foreclosure by advertisement, declares that "if the property consists of two or more distinct farms, tracts or lots, they must be sold separately," but has the further provision "and as many only of the distinct farms, tracts or lots shall be sold as it is necessary to sell in order to satisfy the amount due at the time of the sale and the costs and expenses allowed by law," although the word "must" is used in this section, and if its effect were to be construed in view of the decision to which reference has been made, it would be necessary to declare it directory; such a conclusion would not be justified, taking the whole context of the section into consideration, and from which it is manifest that it was intended to be absolute and mandatory, as evidenced by the prohibition of the sale of any more of the farms, tracts or lots than necessary to satisfy the amount due at the time of the sale. The section, it may be said, with great propriety, is not only mandatory but prohibitory, its whole context considered together. There is nothing upon the record to show that the sale of the entire property, presented as it was on maps and by description in the mortgages to consist of distinct and separate parcels, was necessary to realize and discharge the amount due at the time of the sale, and this is an indispensable factor in the defendant's title. It became necessary for him to establish the fact that the prohibition of a redundant sale did not apply to the proceedings under which he acquired title. It is not necessary, in this case, to determine whether the sale was void or not when we have reached the point establishing

a doubtful title, under the authorities to which reference has been made, and, therefore, in the administration of justice, it becomes our duty to declare the purchaser relieved from his obligation to complete, and in such an action as this to declare the plaintiff entitled to recover. However conclusive a judgment may be where all the parties are before the tribunal pronouncing it, the court stands in quite a different attitude where it is called upon to compel a purchaser to take title under a judicial sale who asserts that there are outstanding rights and interests not cut off or concluded by the judgment under which the sale was made. The objection may involve a mere question of fact or it may involve a pure question of law upon undisputed facts. The purchaser, however, is entitled to a marketable title. A title open to a reasonable doubt is not a marketable title, and the court cannot make it such by passing upon an objection depending upon a disputed question of fact or a doubtful question of law in the absence of the party in whom the outstanding right was vested. (*Fleming* v. *Burnham, supra.*) There is nothing to show that the infant heir of the mortgagor hereinbefore mentioned, and who has not yet arrived at maturity, is cut off by any proceeding from his right to assail the defendant's title — to challenge it by reason of the alleged invalid sale herein considered. The case of the *Mutual Life Insurance Company* v. *Bronson* (reported in 22 N. Y. Weekly Dig., 452), and upon which the appellant relies with great confidence, is not controlling herein upon the question presented in regard to the sale of the premises as one parcel. In that case the mortgaged premises consisted of ten city lots lying contiguous to one another and separated only by imaginary lines. In this case, as we have seen, the lines dividing the lots were distinct, palpable, not imaginary, and were characterized by different tenements, and, as we have suggested, and as has also been suggested, intended by the mortgagor to be regarded as separate and distinct parcels when the mortgage was executed. For these reasons, in addition to those assigned by the justice in the court below, we think the judgment appealed from should be affirmed, with costs.

MACOMBER, J., concurred.

VAN BRUNT, P. J. :

The question presented seems to be the same as that in the case of a decree of foreclosure expressly requiring the premises to be

sold separately; a purchaser was asked to take title, the premises having been sold together in plain violation of the terms of the decree.

The statute is the decree under which the sale is had, and its due claim must be followed.

Judgment affirmed, with costs.