DOROTHEA E. BECKER, Respondent, *v.* JOHN A. MUEHLIG, Individually and as Surviving Executor, etc., of LOUIS MUEHLIG, Deceased, and Others, Defendants, Impleaded with CAROLINE A. R. HARSCH and Another, Appellants.

Fourth Department, November 2, 1927.

Partition — sale — interlocutory judgment ordered sale free from debts — referee sold subject to unpaid paving taxes — bidder refused to complete on ground that she was not informed of change in terms — referee must comply with terms of judgment — injury to bidder may be presumed — bidder not required to complete.

The interlocutory judgment in a partition action directed the sale of the premises "free from the lien of all debts" and ordered that the sale be made under the direction of a referee therein appointed. The referee sold the premises "subject to all unpaid paving taxes" and the bidder refused to complete the purchase on the ground that no statement was made as to the change in the terms of sale until after her bid had been made. The bidder will not be compelled to complete the purchase.

The referee appointed to sell property in a partition action must abide by the terms of the judgment and has no power to change those terms, and it will be presumed that a bidder suffers injury where the terms are changed without the authority of the court.

SEARS, J., dissents, with memorandum.

APPEAL by the defendants, Caroline A. R. Harsch and another, from an order of the County Court of the county of Erie, entered in the office of the clerk of said county on the 13th day of July, 1927, directing Caroline A. R. Harsch to complete the purchase of premises bid in by her at a sale in partition and to pay the purchase price thereof, and in event of her failure to do so that the premises be resold at public auction and that she be liable for any deficiency.

*G. H. Wende,* for the appellants.

*Daetsch, Paul & Lesswing* [*John G. Lesswing* of counsel], for the respondent.

SAWYER, J. The action is in partition and by its interlocutory decree the premises were directed to be sold at public sale "free from the lien of all debts" by and under the direction of a referee therein appointed.

On the day fixed in the notice therefor, the referee attended and offered the property for sale under terms of sale customary in such matters and that conformed with the direction of the interlocutory judgment except that they provided that "said premises shall be sold subject to all unpaid paving taxes," and that receipts for the

payment of any such taxes that were liens or incumbrances on the premises would not be allowed to apply on the purchase money as was permitted for other liens.    The terms were read and announced at the sale by the referee and the amount of the paving taxes was stated by him to be from $600 to $650 as is shown by his report and the voluminous affidavits forming a part of the record.

Defendant Caroline A. R. Harsch was present with her attorney and through him bid in the property for $7,500 but declined to make the ten per cent down payment required by the decree and terms of sale, and also refused to sign the memorandum of sale. Her refusal arose out of her belief that she was buying the property for $7,500 and not for $7,500 plus the amount of the paving tax, as she is claimed by plaintiff to have done.

The referee has reported that the sale was made subject to the paving taxes and that this with their amount was publicly announced before the property was offered.    Mrs. Harsch denies this; her claim is that when the property was first offered for sale, nothing was said about the unpaid paving taxes; that not until after her bid of $7,500 was made did the referee announce their existence; that consequently their lien affected subsequent bids only, while that made by her stands at $7,500.

A number of affidavits in support of both contentions were submitted with the motion for confirmation of the referee's report and on these conflicting affidavits Mrs. Harsch has been ordered to meet her bid of $7,500 and accept the deed; this in effect makes the purchase price to her somewhere from $8,000 to $8,150 and should she still decline she becomes responsible for any deficiency between that amount and the result of the second sale.

The vital question presented is not whether the announcement preceded or followed defendant's bid, but whether a referee must conform to the directions of the judgment under which he is acting. Sales in partition are analogous to those in foreclosure and of the latter it is said that " the officer conducting a foreclosure sale must act in strict conformity to the terms and directions of the decree, and of the statute, if there be any, which is applicable to such proceedings, and also in obedience to the writ, order, or other process which more immediately defines his authority." (27 Cyc. 1696.)    The rule is not without reasonable elasticity, however, for " Where the act of the referee is unauthorized and harmless, the parties may disregard it. Where the act of the referee is in excess of authority and a party in interest is not injured, the parties may disregard it and the purchaser cannot complain, and the court, on the motion of the parties affected, may ratify the act." (*Mullins* v. *Franz*, 162

33

App. Div. 316.) " Where the act is unauthorized and property rights of a party in interest are injured the act must be repudiated." (*Mullins* v. *Franz, supra.*)    The law does not confine its protection to the parties to the action nor withhold it from all others who may suffer injury from the wrongful act.    A purchaser at the sale, misled to his injury thereby, is entitled to appeal to the court for relief and to receive the same redress that would be extended to the other parties.    In this case, however, the bidder is also a necessary party to the action.

A referee to sell is a ministerial officer, appointed by the court for its convenience and charged only with the duty of making the sale in the manner it may direct.    A plaintiff, or even all parties to the action, may consent to a variation from the court's direction, but there still remains to be considered the rights of the purchaser. The validity of his title to the real estate is involved.    He gets his title through the referee but its marketability, or otherwise, must rest upon the action of a court of competent jurisdiction and not upon the discretionary action of a mere ministerial officer appointed for a specific purpose.    He may, as is here claimed, be led by the unauthorized act of the referee into an offer for the property greater than he intended to make or was willing to pay.    In still other ways his rights and interests may be jeopardized.    Can it be said that the court is without power to vacate the unauthorized sale and thus relieve him from his difficulty?

The question of the authority of such referees to vary from the directions contained in their empowering judgments or decrees has been before our courts a number of times, and in every instance, where injury was shown, the rule above indicated has been enforced in all its strictness.

Thus in *Hemmer* v. *Hustace* (51 Hun, 457), which was an action to recover damages for the failure of defendant to perform a contract to convey, Presiding Justice VAN BRUNT (p. 461) states: " The question presented seems to be the same as that in the case of a decree of foreclosure expressly requiring the premises to be sold separately; a purchaser was asked to take title, the premises having been sold together in plain violation of the terms of the decree.    The statute is the decree under which the sale is had, and its due claim must be followed."    In *Moller* v. *Watts* (56 App. Div. 562) the referee at the solicitation of the owners of the equity of redemption, in a mortgage foreclosure, consented to hold the matter for thirty days after the sale and within that time to accept the amount due and cancel the sale.    Timely tender of the sum was made but he declined to carry out the agreement and was sustained by the court, Mr. Justice JENKS writing: " The referee had no official power to make the

statement in question.    His authority was to carry out the judgment of the court.    (*Angel* v. *Clark*, 21 App. Div. 339.)    The terms of the sale could not vary the judgment.    (Thomas Mort. § 935.) "    *Mullins* v. *Franz* (*supra*), decided by the Second Department in 1914, is a case not unlike the one we are now considering.    It was a foreclosure action in which the referee included in the terms of sale the following: "Subject to the right, title and interest, if any, of the City of New York, of, in and to the above premises, and subject to covenants and restrictions, if any."    The judgment contained no direction that the sale should be subject to such a provision and Mr. Justice STAPLETON, writing for the Second Department, based his conclusion that the sale was illegal on the right of the purchaser to a marketable title, saying that " A referee who is directed by a judgment to sell certain described real property cannot insert in the terms of sale on his own motion or at the suggestion of the plaintiff or his agents a provision that the premises are sold subject to a vague, indefinite, uncertain outstanding interest in another. The effect of such an act is to make the subject-matter of the sale uninviting to intending purchasers."    He also says: " The quality of the estate or the extent of the interest to be sold, or the liens, charges or incumbrances subject to which the property is to be sold, are not to be left to a mere ministerial officer, the referee, or to the control of the plaintiff's attorney.    The referee has no power or authority except the judgment of the court.    He cannot vary the judgment.    He cannot make a sale except in compliance with it.    He can sell neither more nor less than it directs him to sell.    The terms of sale cannot vary the judgment or relieve the referee from the performance of his duty to sell as directed."    (p. 318.)    In *People ex rel. Day* v. *Bergen* (53 N. Y. 404) a referee in foreclosure, where the decree directed that he should pay the fees and expenses of the sale, together with any liens for taxes, assessments or prior mortgages, and who, instead, paid a large part of the money he received to the plaintiff in the action, thereby rendering himself unable to pay all liens of that character, was held in contempt at the instance of the purchaser, the Court of Appeals saying: " The duties of the defendant, as referee for sale of the mortgaged premises under the judgment of foreclosure, were ministerial in their character.    *    *    *    Such are the plain directions of the judgment; and if, without or before paying the prior liens, he has paid the plaintiff and the other parties the amounts awarded to them, he has done so at his peril and in his own wrong.    The terms of the sale could not vary the judgment or relieve the referee from the performance of his duties."    And again in *Heller* v. *Cohen* (154 N. Y. 299) a title was held unmarketable on the ground, among others, that the property had been sold under

a decree in partition and purchased by plaintiffs' testator, but that the referee appointed to make such sale, without authority, changed the description in the deed he gave, so that it did not conform to that contained in the complaint, and, hence, the deed was invalid.

With these expressions of the courts in mind we approach the instant controversy.

These paving assessments were liens upon the lands involved and, therefore, a debt within the contemplation of the interlocutory judgment. (*Greene* v. *Bunzick*, 23 App. Div. 103.) That they were not discovered by plaintiff until at or about the time of the sale will not serve to excuse the deviation between the terms of sale contained in the judgment and those evolved by the referee. If it was not desired to sell the property free from these as well as other liens, the court was open to the parties and an amendment of the decree so as to provide that the sale should be made subject to these particular assessments was an available remedy.

The referee, in assuming to change the terms from those provided in the judgment under which he was acting, rendered his sale illegal and void, unless it can be said that no injury to any of the parties in interest has flowed therefrom. A dispute in that regard cannot be determined upon conflicting affidavits. A duty rests on a referee to obey the direction of the court, and where a controversy concerning the effect of his disobedience arises, the court will, on a motion of this character, assume that the injury has happened. That is the ordinary and logical result of disobedience.

Plaintiff having induced the action of the referee has no just complaint of the refusal of the defendant purchaser to consummate her sale because of the misunderstanding that came to pass.

The order appealed from should be reversed, with ten dollars costs and disbursements, and the motion denied, with ten dollars costs.

All concur, except SEARS, J., who dissents and votes for affirmance on the ground that the bidder was not injured inasmuch as she knew that the referee was offering the property for sale subject to the taxes before the bidding was closed. Present — HUBBS, P. J., CLARK, SEARS, TAYLOR AND SAWYER, JJ.

Order reversed, with ten dollars costs and disbursements, and motion denied, with ten dollars costs.